# CHARLESTON.

## STATE v. DONAHUE.

Submitted October 24, 1916.      Decided November 14, 1916.

1. WITNESSES—*Impeachment—Evidence—Admissibility.*

   The deposition of a witness taken before a coroner may be introduced in evidence on the trial of one accused of murder for the purpose of contradicting the witness on material facts testified to by him. (p. 262).

2. CRIMINAL LAW—*Trial—Instructions.*

   An instruction to the jury, based on a theory not warranted by the evidence, is erroneous. (p. 263).

3. SAME—*Jury Question—Instructions.*

   On the trial of one accused of murder, the jury are the judges of the degree of the crime, and an instruction which in the abstract undertakes to define that certain acts of the defendant shown in evidence rendered him prima facie guilty of murder in the second degree without at the same time submitting to the jury the facts and circumstances of the killing, characterizing the degree of the offense, is misleading and erroneous. (p. 263).

4. HOMICIDE—*Duty to Retreat.*

   One without fault, assaulted by another in a public road, where he has the right to be, is not bound to retreat, but may lawfully stand upon his rights and repel the assault and if necessary to protect his own life or save himself from great bodily harm, may even take the life of his assailant. (p. 263).

5. CRIMINAL LAW—*Homicide—Trial—Instructions.*

   Instruction number 7, for the State, based on the theory of an assault by defendant without any, or upon very slight provocation, the proof showing great provocation, is bad; and is also bad for omitting to submit to the jury the facts and circumstances of the assault affecting the degree of the crime of which the accused may be found guilty. (p. 263).

6. SAME—*Instructions—Reasonable Doubt.*

State's instructions numbers 8 and 9, covering the subject of reasonable doubt, substantially state the law of the case, according to *State* v. *Kellison,* 56 W. Va. 690, and *State* v. *Abbott,* 64 W. Va. 411, and are not bad upon any principle stated in *State* v. *Taylor,* 57 W. Va. 239. (p. 264).

7. SAME—*Homicide—Defenses—Instructions.*

There being no evidence that defendent voluntarily made himself drunk for the purpose of nerving his animal courage for the accomplishment of a design to kill deceased, an instruction based on that theory, and also on the theory that the blow resulting in the death of decedent was without any or upon very slight provocation, not supported by the evidence, is bad, and should have been rejected. (p. 264).

8. SAME—*Trial—Instructions.*

Defendant's instruction number 2, which proposed to tell the jury that though they might believe the evidence established some probability in favor of the guilt of the defendant, rather than of his innocence, such evidence would not amount to proof of guilt however great the probability, if constituting a correct legal proposition, was inapplicable to this case, where the fact of the killing was fully proven, and the guilt or innocence of the defendant depended upon the facts and circumstances attending the homicide. (p. 265).

9. HOMICIDE—*Offenses—Instructions.*

Defendant's instruction number 7, rejected, substantially covered by point 8 of the syllabus of *State* v. *Cain,* 20 W. Va. 680, should have been given. (p. 265).

10. SAME—*Trial—Instructions—Deadly Weapon.*

The defendant's instruction number 9, propounded a correct legal proposition, and should have been given to the jury, upon the principles stated in *State* v. *Gravely,* 66 W. Va. 375. (p. 266).

Error to Circuit Court, Jackson County.

Merton Donahue was convicted of murder in the second degree, and he brings error.

*Reversed, and new trial awarded.*

*J. L. Wolfe* and *J. A. Seaman,* for plaintiff in error.

*A. A. Lilly,* Attorney General and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

MILLER, JUDGE:

Indicted for the murder of James Reynolds defendant was found not guilty of murder in the first degree, but guilty of murder in the second degree, as charged in the indictment, and the judgment complained of was that he be imprisoned in the penitentiary of the state for the term of twelve years.

The first point of error is that the court below, proper ground being laid therefor, would not permit defendant to introduce in evidence to the jury the testimony of Everett Redman, taken before the coroner, for the purpose of contradicting him on material facts testified to by him on the trial before the jury. The record shows that the only witnesses to the killing were Redman, Redman's wife, who did not see the fatal blow struck, a woman by the name of Hughes, who had left the country and did not testify before the jury, and another witness present when the trouble began, but who left immediately and knew nothing of the killing. So the evidence of Redman was very important, and the character of the offense depended largely on the facts and circumstances of the killing detailed by him. According to his evidence before the coroner "Reynolds knocked Donahue down and clumb on top of him and commenced to pound him." On the trial he denied that he had so testified. His evidence before the jury was that Reynolds "struck at him but didn't knock him down and grabbed him and threw him down and jumped on him and pounded him in the face." Before the coroner he swore: "When I took off Donahue, Donahue raised up and pulled out his knife and told him to hold on he did not want any fighting." On the trial he swore that he had not so testified before the coroner. Before the coroner he swore, referring to Donahue: "I saw him strike at him twice with the knife, I did not see him hit him." Before the jury he denied that he had so testified. His testimony on the trial was that he did see Donahue hit Reynolds with the knife.

And we find in Donahue's evidence before the coroner other matters tending to contradict other facts more or less important, testified to by him on the trial. Redman's testimony before the coroner was offered for the purpose of con-

tradicting him, not as evidence of the guilt or innocence of the accused. For the purposes offered this evidence was legal and competent and should have been admitted. *New York, etc. R. Co.* v. *Kellam,* 83 Va. 851, 857, 3 S. E. 703; *Wormeley* v. *The Commonwealth,* 10 Grat. 658.

Complaint is next made of certain of the instructions given, over defendant's objection, at the instance of the state. Number four we think is bad. There is no evidence on which to base the theory of the instruction, that the defendant sought, brought on, or voluntarily entered into the difficulty with deceased. On the contrary all the evidence shows that defendant, though made drunk by whiskey furnished by deceased, and which he urged defendant to drink, endeavored to avoid the difficulty, and did not strike until after the deceased had knocked or pulled him down and had beaten him with his fists. There is no conflict in the evidence on this point.

Instruction number five told the jury that if they believed from the evidence that defendant unlawfully and intentionally stabbed Reynolds with a knife, though he may not have intended to kill him, yet he was prima facie guilty of murder in the second degree. This instruction abstractly considered may state a correct legal proposition, but the jury are the judges of the degree of the crime, under all the circumstances of the killing, and as the instruction omits to submit the question of the circumstances given in evidence to reduce the degree of the crime or justify the killing, we think it was misleading and should not have been given in the form submitted. *State* v. *Morrison,* 49 W. Va. 210, point 2 of the syllabus.

Instruction number six is based on the theory of a quarrel between defendant and deceased in which both were at fault, a fact not justified by the evidence. The evidence shows that defendant declined the combat and that it was brought on by deceased, in the public road, where defendant had the right to be. Defendant was not bound to retreat, as the instruction says, from the place where he was, and this instruction is bad for these reasons.

Instruction number seven told the jury that a mortal

wound given with a deadly weapon in the previous possession of the slayer without any or upon very slight provocation, is prima facie willful, deliberate, and premeditated killing, throwing upon the accused the necessity of proving extenuating circumstances. We think it is bad based as it is on the theory that the assault was without any, or upon very slight provocation. The evidence shows great provocation. Besides, the instruction is bad for the same reason that a similar instruction was held bad in *State* v. *Hertzog,* 55 W. Va. 74, 79-80, namely, for failing to add the words of point eleven in *State* v. *Cain,* 20 W. Va. 681, or words of like import, ''and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State'', &c.

Instructions numbered eight and nine, relating to the subject of reasonable doubt, we do not think amenable to the criticism of defendant's counsel. As said in the recent case of *Mullins* v. *Commonwealth,* 113 Va. 787, it is very doubtful whether what is meant by the term ''beyond a reasonable doubt'', can be made clearer by attempted definition or explanation, but instructions substantially like these were approved, the first in *State* v. *Kellison,* 56 W. Va. 690, and the second in· *State* v. *Abbott,* 64 W. Va. 411, and we do not think them bad for the reason given in *State* v. *Taylor,* 57 W. Va. 239, for disapproving state's instruction number two in that case. The instruction in that case was ''The oath of a juror imposes on him no obligation where no doubt would exist, if no oath had been administered.'' It was thought that such an instruction was too refined and obscure, and liable to mislead the jury.

Instruction number ten, relating to drunkenness as affecting the guilt or innocence of the accused, we think is bad also. There is no evidence showing or tending to show that defendant made himself drunk, so as to excuse himself from or mitigate his offense. *State* v. *Robinson,* 20 W. Va. 713, fourth point of the syllabus, holds that a person, who has formed a willful, deliberate, and premediated design to kill another and in pursuance of such design voluntarily makes himself drunk for the purpose of nerving his animal courage for the accomplishment of the design and then executes that design,

is not excused, but is guilty of murder. But there is no evidence in this case justifying the theory of this instruction. Moreover, the instruction is bad for another reason. It is based on the theory that the blow inflicted by defendant on Reynolds was without any or on very slight provocation, and does not submit to the jury the question arising on the facts and circumstances surrounding the killing, for which we have held instruction number seven bad.

The next complaint is that the court rejected certain instructions proposed by defendant. Instruction number two, rejected, proposed to tell the jury that though they might believe that the evidence established some probability in favor of the guilt of the defendant rather than in favor of his innocence, such evidence could not amount to proof of guilt, however great the probability, and that they, therefore, should find the defendant not guilty. Counsel for the prisoner say such an instruction has been approved by this court, but we are not cited to the case, nor have we found any case in which such an instruction has been approved. But assuming that the instruction contains a correct legal proposition, we think it was inapplicable to the case at bar. There was no question before the jury as to the fact of the killing by the defendant. The main questions before the jury were the question of intent, the degree of guilt, whether first degree or second degree murder, or voluntary manslaughter, or killing in self defense, and, therefore, not guilty of any offense. There was little conflict in the evidence, and it was for the jury to say, from all the evidence, of what offense the defendant was guilty, if any, and there was little, if any, room for speculation on the probabilities of guilt or innocence.

Instruction number six is fully covered by plaintiff's instruction number four, given, and therefore no error was committed in rejecting number six.

Instruction number seven, rejected, we think propounded correctly a proposition applicable to the evidence in the case, and should have been given, as follows: ''The Court instructs the jury that as to the imminency of the danger which threatened the prisoner, and the necessity of killing in the first instant, the prisoner is the judge; and that the jury

must pass upon the prisoner's action in the premises, viewing said action from the prisoner's standpoint at the time of the killing; and if the jury believe from all the facts and circumstances in the case, viewed from the standpoint of the prisoner at the time of the killing, that the prisoner had reasonable ground to believe, and did believe, the danger imminent, and that the killing was necessary to preserve his own life, or to protect him from great bodily harm, he was excusable for using a deadly weapon in his defense and the jury should find the defendant not guilty." *State* v. *Cain*, 20 W. Va. 680, point 8 of the syllabus.

Instruction number nine, rejected, is partially covered by instruction number seven, which we have held good, but that instruction was not given by the trial court. We think instruction number nine propounds correct legal propositions, and that it should have been given to the jury. The instruction was as follows: "The Court instructs the jury that although you may believe from the evidence in this case that the defendant gave to the deceased the knife wound that caused his death, and though you further believe that it was done with a dangerous and deadly weapon, yet if you also believe from the evidence that he, the defendant, acted from sudden passion brought about by being assaulted, struck and beaten by the deceased without fault on the part of defendant, and after he had declined to engage in a fight with deceased, and that the defendant in so wounding the deceased was not actuated by antecedent malice, then you can not presume malice from the mere fact alone that the killing was done with a deadly weapon.

"You are further instructed that if you believe from all the evidence as well by the State as by the defendant that the deceased, James Reynolds, upon a public highway of this County assaulted and beat the defendant after he, the defendant, had declined to fight and when the defendant was apparently grossly intoxicated, and that such said assault was of such a character as to cause the defendant to fear and believe that death or great bodily injury was about to be inflicted upon him by the deceased, and if you further believe that the defendant had reason to believe and did believe

himself in great danger of death or serious bodily injury, and that he acted without malice or previously formed design, and only acted because he was as he then believed in imminent danger of life and bodily injury, and killed the deceased by reason thereof, then he, the defendant, is not guilty of any offense, and you should so find by your verdict, notwithstanding the fact that the killing was done with a deadly weapon, and you are authorized in considering the imminency and danger of the defendant from the deceased to take into consideration their relative sizes and strength.'' See *State* v. *Gravely,* 66 W. Va. 375.

For the errors aforesaid committed on the trial below we are of opinion to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed, and new trial awarded.*