COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Annunziata
Argued at Richmond, Virginia


BERNICE LYNN MURPHY

v.        Record No. 0799-94-2        MEMORANDUM OPINION[*] BY
                                      JUDGE ROSEMARIE ANNUNZIATA
COMMONWEALTH OF VIRGINIA                  NOVEMBER 27, 1995


            FROM THE CIRCUIT COURT OF HALIFAX COUNTY
               Samuel M. Hairston, Judge Designate


        Alan T. Gravitt (Gravitt & Gravitt, P.C., on
        briefs), for appellant.

        Kathleen B. Martin, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


     The appellant, Bernice Lynn Murphy, was convicted of robbery

and the use of a firearm in the commission of a robbery following

a bench trial in the Halifax County Circuit Court.  She was a

juvenile at the time of the alleged offense, and her case was

transferred to the circuit court from the juvenile court.  At

trial, Murphy made timely motions to strike the Commonwealth's

evidence and now appeals her convictions alleging the

insufficiency of the Commonwealth's evidence.

     On February 7, 1993, a clerk at the South Boston Mother

Hubbard's Convenience Store was shot and killed sometime before

10:45 p.m. in an apparent robbery attempt.  Subsequently, the

police interviewed Murphy about the incident.  She was seventeen

_____

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

years old at the time. After initially denying any participation in the incident, Murphy told the police that on the day of the shooting she had visited her sister-in-law, Geraldine Fernandez, at Fernandez's apartment in Halifax County. Lance Chandler, a friend of Murphy, asked Fernandez to drive him, George Boyd, and Dwight Wyatt to South Boston. Earlier that day, Murphy overheard Chandler and Wyatt discussing the idea of getting a gun and robbing a store, but she was not otherwise involved in this conversation.

Fernandez drove Murphy, Chandler, Boyd, and Wyatt to South Boston. Murphy told the police that she accompanied Fernandez because Fernandez did not have a driver's license. Murphy thought that, since she had a learner's permit, if she rode in the passenger's seat Fernandez would avoid more serious trouble. The three men, all clad in dark clothing, sat in the car's back seat. Wyatt exited the car at a South Boston residence and returned after a few minutes. Wyatt testified that the purpose of the stop was to obtain a gun. Wyatt passed the gun to Chandler in the back seat of Fernandez's car. There was no testimony that Murphy either saw Wyatt give Chandler the gun or was aware that the robbery previously discussed by Chandler and Wyatt was then imminent.

The group drove past the Mother Hubbard Convenience Store and Fernandez let the men out at the next intersection. Wyatt wore a hood when he exited the car. The appellant overheard

Chandler remark, "Just go on in and get out, don't waste no time." Fernandez and Murphy drove around the neighborhood while waiting for the men to return. Upon returning, Boyd carried a case of beer. Chandler was "swearing and cussing" when he got into the car and he kept saying, "why didn't the man open the register?" and that "[h]e got shot over money that wasn't even his." Later that night, the group of five consumed the beer, Murphy drinking two of them.

In her statement to the police, Murphy stated that it was Chandler's idea to rob the store and she felt if they got caught she and Fernandez could be "accessories" to the crime. The evidence does not establish whether she knew the legal definition or significance of the term "accessory."

Wyatt testified that Chandler shot the clerk after he refused to hand over any money, and that the men took the beer because they were unable to open the register. The trial court found Murphy guilty of robbery and the use of a firearm during a robbery; she was acquitted of murder and a related firearms charge.

On appeal, this Court must view the evidence in the light most favorable to the Commonwealth and must accord to the evidence all reasonable inferences fairly discernible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "The finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands

- 3 -

on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed." Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (quoting Lane v. Lane, 184 Va. 603, 611, 35 S.E.2d 744, 752 (1945)).

It is well settled that mere presence and consent will not suffice to make one an accomplice. Pugliese v. Commonwealth, 16 Va. App. 82, 93-94, 428 S.E.2d 16, 24-25 (1993); Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986). It must be shown that the alleged accomplice, by words, gestures, signals or actions intended, in some way, to encourage, advise, urge, or help the person committing the crime to commit it. Ginanni v. Commonwealth, 13 Va. App. 1, 3-4, 408 S.E.2d 767, 768 (1991); Rollston v. Commonwealth, 11 Va. App. 535, 540, 399 S.E.2d 823, 826 (1991); Ramsey, 2 Va. App. at 269, 343 S.E.2d at 468.

> A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance. . . . Every person who is present at the commission of a crime, encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abetter, and is liable as a principal. . . . To constitute one an aider or abettor, he must be guilty of some overt act, or he must share the criminal intent of the principal or party who commits the crime. . . .

Pugliese, 16 Va. App. at 93, 428 S.E.2d at 24-25.

- 4 -

Overt acts constitute evidence that the alleged accomplice shares the criminal intent of the principal. See Pugliese, 16 Va. App. at 93, 428 S.E.2d at 25; Triplett v. Commonwealth, 141 Va. 577, 586, 127 S.E. 486, 489 (1925); Rollston, 11 Va. App. at 539, 399 S.E.2d at 825; Murray v. Commonwealth, 210 Va. 282, 283, 170 S.E.2d 3, 4 (1969). When no overt acts have been performed by the alleged accomplice, he is still a principal in the second degree if he is present during the commission of the crime and has previously communicated to the perpetrator that he shares the perpetrator's criminal purpose, since such a communication of shared intent makes the perpetrator more likely to act. Rollston, 11 Va. App. at 539, 399 S.E.2d at 826 (citing Groot, Criminal Offenses and Defenses in Virginia 183 (1984)).

Whether a person does in fact aid or abet another in the commission of a crime is a question which may be determined by circumstances as well as by direct evidence. Harrison v. Commonwealth, 210 Va. 168, 171-72, 169 S.E.2d 461, 464; Pugliese, 16 Va. App. at 93-94, 428 S.E.2d at 25.

In this case, there is no evidence that Murphy previously communicated to the perpetrator that she shared his criminal purpose. Furthermore, there is no evidence of overt acts which establish beyond a reasonable doubt such criminal intent on her part or which establish that she contributed in any way to the commission of the crime.

The evidence shows no more than knowledge of and presence

during the commission of the crime.  The only acts Murphy performed which arguably relate to the commission of the crime are the following: 1) she failed to disapprove or object; 2) she consumed some of the beer stolen from the convenience store; and 3) she characterized herself as a possible "accessory."

However, an individual's failure to dissuade or to interfere with criminal activities while accompanying the perpetrators to the scene is insufficient to constitute aiding and abetting.  See Smith v. Commonwealth, 185 Va. 800, 818-20, 40 S.E.2d 273, 281-82 (1946); Moehring v. Commonwealth, 223 Va. 564, 567-68, 290 S.E.2d 892-93 (1982); Jones v. Commonwealth, 208 Va. 370, 373-74, 157 S.E.2d 909-10 (1967); Pugliese, 16 Va. App. at 93-94, 428 S.E.2d at 25 (While presence at the commission of the crime without disapproving or opposing it is a circumstance which may be considered by the trier of fact in determining whether the accused is an aider and abettor, without more, these circumstances are insufficient to sustain a conviction).  And, while Murphy's statement that she could be an "accessory" to the crime and her consummation of some of the stolen beer create a suspicion of guilt, the acts are too equivocal to support a finding of guilt.

Absent other evidence in the case, these two acts fail to establish that Murphy shared the perpetrator's criminal intent. Nor do they establish beyond a reasonable doubt that she encouraged, approved, or countenanced the crime.  The convictions

are accordingly reversed and the case is remanded to the trial court for further proceedings on lesser-included offenses, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>